UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

S.T. SMITH,                          )
                                     )
                Plaintiff,           )
                                     )
                                     )   CASE NO. 1:04-cv-1501-DFH-TAB
         v.                          )
                                     )
CSX TRANSPORTATION,                  )
                                     )
                Defendant.           )

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff S.T. Smith alleges that he suffered chemical exposure injuries to his face, arm, and leg while working as a rail car inspector for defendant CSX Transportation at an Indianapolis rail yard on July 24, 2001.  Plaintiff contends that his injuries were caused by chemicals on the air hoses of a tank car.  He has sued CSX Transportation under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, to recover damages.

CSX has moved for summary judgment, arguing that Smith has failed to produce any evidence that CSX was negligent or that its alleged negligence caused his injuries.  In light of FELA's lenient standards for surviving summary judgment, the court disagrees and denies defendant's motion.

*Summary Judgment Standard*

Summary judgment should be granted where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there

exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Id.*

Successful opposition to summary judgment demands more than conjecture, speculation, or a mere scintilla of evidence.  See *id.* at 249-50 ("If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must do more than simply show "some metaphysical doubt as to the material facts").  At the same time, in deciding a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability" under the governing substantive law.  *Anderson*, 477 U.S. at 254, quoted in *Harbin v. Burlington Northern Railroad Co.*, 921 F.2d 129, 130-31 (7th Cir. 1990) (reversing summary judgment in favor of employer on FELA claim).

The quantum of evidence required to establish liability in an FELA action is much less than in an ordinary negligence case.  *Harbin*, 921 F.2d at 131.  The court must deny a motion for summary judgment and must submit a FELA claim

to a jury when "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the [plaintiff's] injury . . . ." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543-44 (1994), citing *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506 (1957); *see also Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739, 742 (7th Cir. 2005) (affirming summary judgment for railroad where there was no evidence of negligent conduct by railroad).

*Facts for Summary Judgment*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). In light of this standard, the following facts are undisputed for purposes of the motion or reflect the evidence in the light reasonably most favorable to plaintiff.

On July 24, 2001, plaintiff S.T. Smith was working as a rail car inspector for defendant CSX Transportation at its Hawthorne rail yard in Indianapolis, Indiana.[1] Smith began his shift at 3:00 p.m. Smith Dep. at 19. Smith testified

---

[1]While plaintiff's amended complaint states that he was working at the Avon yard, the parties appear to agree that plaintiff was working at Hawthorne yard on the day of his injury.

that July 24th was a hot, dry day and that he wore blue jeans, a T-shirt, and a long-sleeved welding jacket to work.  *Id.* at 21, 22.

Smith's job was to "line the air" and to inspect the trains to get them ready to go out.  *Id.* at 20-21.  Although the evidence before the court is rather sparse as to what this involves, part of the task required Smith to couple tank-car air hoses together.  He testified that this requires putting the air hoses in one's arms and turning them in different ways to get the hoses into the shift couplers on the tank cars.  *Id.* at 28-29.

At some point during his shift, Smith completed this task for the cars of one train.  *Id.* at 22, 38.  While walking back to his truck, Smith removed his safety glasses and wiped the sweat from his face with the sleeve of his welding jacket. *Id.* at 28.  His glasses had gotten fogged up and sweat was running into his eyes. *Id.* at 37.  Employees generally carry paper towels to wipe sweat from their faces, but Smith had run out of paper towels on the way back to his truck and therefore used his jacket sleeve.  *Id.* at 22.

As he got closer to his truck, Smith felt his face getting hotter.  Smith Dep. at 23, 39.  He walked back to his truck and drove to the yard office.  *Id.* at 39. There, yardmaster Terry Akels observed that Smith's eye had "swelled up" and Smith viewed his eye in the mirror.  *Id.* at 23-24.  Akels arranged for another worker to drive Smith to Methodist Occupational Health Center ("Methodist") for

medical treatment. Smith testified that Steve Holler, a CSX employee, first wrote up a statement of the events concerning the incident. *Id.* at 24, 40. That statement has not been presented to the court. Smith testified that another CSX employee then drove him to Methodist. *Id.* at 24.

Relating to his visit at Methodist, Smith testified that "they kept putting the stuff on my eye. And I went back about four or five times . . . ." *Id.* at 24. He stated that his eye and hand were both treated with a silver salve. *Id.* at 36. He testified that he also felt a slight burning on his leg later that night. *Id.* at 37.

Smith characterized the substance that got into his eye: "Whatever come off the air hose. Whatever was on the air hose, or whatever it was, that's what got on my eye. They never found what chemical it was." Smith Dep. at 28. Smith's theory is that some chemical got onto the air hoses, then onto his sleeve, and then into his eye. *Id.* at 29. He testified that rail cars sometimes either leak or sweat. *Id.* at 22. He also testified that some of the cars carry "pop-off" air hoses and that "that's when you run into these fumes and stuff behind them." *Id.* at 30-31.

When asked how he knew that it was a chemical rather than a particle of dirt that had caused his eye irritation, Smith offered two responses. First, he testified: "A particle of dirt don't keep your eye swollen up like mine is now." Smith Dep. at 31. He also testified that he believed it was a chemical because he had a spot on the back of his hand that became swollen in the same way. *Id.* at

32.   Smith acknowledged that it was possible for him to have dirt and other foreign material on his sleeves after working and performing tasks like brake shoe repair.  *Id.* at 37.  However, he claims that his injury on July 24th did not occur after repairing brake shoes.  *Id.* at 38.  Smith also acknowledged that it was common for air hoses to have dirt and other foreign material on them.  *Id.* at 57.

On the issue of negligence, Smith testified that about 15 years ago, CSX had a sprinkler system that would clean rail cars when they first came into the yard. *Id.* at 29-30.  Smith claims that CSX would wash down the air hoses and check the cars for leaks before they came out of the chemical factory.  *Id.*  He believes that CSX's failure to have such systems in place at the time of his injury was negligent.  *Id.* at 29, 33.

In his deposition, Smith also was asked how he knew that his injury was caused by a substance from a rail car.  He responded:  "I know I got it from a car because I didn't have it on me before I got in there."  *Id.* at 34.  When asked how he knew this to be true, Smith responded:  "I put the coat on when I got to work." *Id.*  Smith also testified that he wears a freshly laundered welding jacket to work every day.  *Id.*

At one point during his deposition, Smith agreed to the defense lawyer's use of the words "guess" and "speculation," which has given some extra strength to CSX's motion for summary judgment:

> Q:      So you're guessing that whatever got on you got on you from one of these five tank cars?
> A:      That's what I suggested, yeah.
> Q:      That's a guess on your part, isn't it?
> A:      Yeah.

Smith Dep. at 59.  Smith stated that although he would sometimes be told which cars to stay away from because they were leaking, no one had reported any kind of leak on July 24th.  *Id.* at 63.  In response to:  "So it would be speculation on your part if there was any leak, right?" Smith answered "Yeah."  *Id.*  He also admitted to having no knowledge that anything was wrong with any train car.  *Id.* at 63-64.

Besides his own deposition testimony, the only other evidence Smith has submitted to oppose CSX's motion are documents he describes as medical records from his visits to Methodist.  See Pl. Ex. B.  These records are not accompanied by a supporting affidavit, and CSX challenges the court's consideration of them.  Smith's submitted records are dated July 30, August 6, and August 13, 2001 and list his diagnosis as "periorbital chemical burn."  CSX has brought to the court's attention earlier medical records from Methodist (dated July 24 and July 25) where Smith's diagnosis is listed as "corneal abrasion."  See Def. Ex. B.

*Discussion*

I.     *Evidentiary Objection*

CSX first challenges Smith's medical records from Methodist as unauthenticated hearsay.   A court generally should not rely on unsworn or unauthenticated documents in deciding a summary judgment motion.  See Fed. R. Civ. P. 56(e); *Markel v. Bd. of Regents of University of Wisconsin System*, 276 F.3d 906, 912 (7th Cir. 2002); see also *Vukadinovich v. Bd. of School Trustees of Michigan City Area Schools*, 776 F. Supp. 1325, 1326-27 (N.D. Ind. 1991) (granting defendant's motion to strike exhibits not certified or incorporated into sworn affidavits).   This general rule has been applied specifically to bar unauthenticated medical records from consideration.  See *Briggs v. Marshall*, 93 F.3d 355, 362 (7th Cir. 1996) (no abuse of discretion in district court's refusal to admit unauthenticated emergency room medical records into evidence at trial).

In addition, at the summary judgment stage, a party may not rely on even authenticated evidence if it would be inadmissible hearsay at trial.   See *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).   Smith has not demonstrated that the documents are admissible under the medical records or business records exceptions to the hearsay rule.  See Fed. R. Evid. 803(4) & (6). Accordingly, the court does not consider Smith's medical records as evidence to oppose CSX's motion for summary judgment.   If Smith wishes to offer this evidence at trial, he will need to provide a foundation for it.

II.   *Summary Judgment Motion*

The FELA provides a remedy to railroad employees who are injured as a result of the negligence of their employers.  45 U.S.C. § 51.  The FELA imposes on railroads a general duty to provide a safe workplace.  *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739, 741 (7th Cir. 2005), citing *McGinn v. Burlington Northern Railroad Co.*, 102 F.3d 295, 300 (7th Cir. 1996).  Unlike state worker's compensation statutes, however, FELA is not a strict liability statute.  *Kossman v. Northeast Illinois Regional Commuter Railroad Corp.*, 211 F.3d 1031, 1035 (7th Cir. 2000).  A plaintiff bringing suit under FELA must prove the common law elements of negligence, including foreseeability, duty, breach, and causation.  *Fulk v. Illinois Central Railroad Co.*, 22 F.3d 120, 124 (7th Cir. 1994).

FELA has been construed liberally to advance Congress' intended remedial goals.  As noted above, a relaxed standard of causation applies under FELA, and a case must be sent to the jury if "the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."  *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994), citing *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506 (1957); *Holbrook*, 414 F.3d at 742.  This lenient standard for avoiding summary judgment mirrors the pro-plaintiff stance of FELA more generally.  *McGinn*, 102 F.3d at 300.

CSX argues that Smith has not met his modest burden of coming forward with any evidence showing either that a chemical from air hoses caused his injuries or that CSX was somehow negligent in allowing Smith to become injured. Although a plaintiff's burden is significantly lighter under FELA than in an ordinary negligence case, a plaintiff still must present *some* evidence of negligence to survive a motion for summary judgment. *Holbrook*, 414 F.3d at 742, citing *Lisek v. Norfolk and Western Railway Co.*, 30 F.3d 823, 832 (7th Cir. 1994); see also *Deutsch v. Burlington Northern Railroad Co.*, 983 F.2d 741, 743-44 (7th Cir. 1992) (affirming summary judgment for railroad where plaintiff rested on allegations in his complaint in response to railroad's motion).

Smith has presented sufficient evidence, just barely, to raise a genuine issue of fact as to whether he was injured as a result of CSX's negligence. First, Smith has presented evidence from which a reasonable fact-finder could conclude that his injuries were caused by a chemical on the air hoses of the tank cars. The nature of an injury can give rise to an inference about its cause. Here, the parties have offered only two possible causes for Smith's injury: chemicals from air hoses that transferred onto Smith's welding jacket sleeve, or dirt/other foreign matter on his sleeve. Smith testified that his eye became swollen in a way that was inconsistent with a mere dirt or dust particle entering his eye. He also testified that his face felt hot, that he suffered injuries to his arm and leg, and that at least the arm injury was consistent in appearance and treated the same way as his eye injury. Smith also testified that he wore a freshly laundered welding jacket to

-10-

work.  All of this evidence tends to support his claim that his injuries were caused by something other than dirt or dust particles.

Smith also testified from his own experience that chemicals are sometimes present on the air hoses of tank cars that are sweating or leaking.  He stated that workers would sometimes be told to stay away from certain cars because they were leaking.  He also testified that he worked with air hoses on several tank cars immediately prior to suffering injury.  Although Smith was not aware that any cars had been identified as leaking on July 24th, there is no evidence suggesting that leaking cars were always identified.  Neither is there evidence that a rail car inspector like Smith would necessarily be aware of chemicals prior to exposure and manifestation of his injury.

If Smith had been correct in his deposition testimony when he described his case as based on a "guess" and "speculation," the court would be required to grant summary judgment.  Those descriptions are not accurate, however, at least when the court views the evidence in the light reasonably most favorable to Smith.  In short, Smith has presented evidence tending to show that his injuries were not caused by mere dust or dirt particles.  The only alternative explanation offered by the parties – chemicals from air hoses – is consistent with the other evidence he has presented.  In FELA cases, the ability to engage in common-sense inferences about causation is vested with the jury in "all but the infrequent cases where fair-minded jurors cannot honestly differ whether the fault of the employer played any

part in the employee's injury." *Walden v. Illinois Central Gulf Railroad*, 975 F.2d 361, 364 (7th Cir. 1992), citing *Rogers*, 352 U.S. at 510. Smith's case meets these standards for surviving summary judgment.[2]

Assuming that chemicals from air hoses did cause his injuries, Smith also has presented evidence from which a reasonable fact-finder could conclude that CSX was negligent in failing to prevent his injuries. Smith testified that CSX previously had a system in place that involved washing down air hoses and checking rail cars for leaks before they came out of the chemical factory. He testified that reinstatement of these practices could have prevented his injury from occurring. There is no contrary evidence at this stage. A reasonable fact-finder could conclude that the prior existence of such practices meant that Smith's injury was foreseeable and that failure to have such systems in place constituted negligence on the part of CSX. Cf. *McGinn*, 102 F.3d at 301 (affirming summary judgment for railroad for injuries caused by brakeman tripping over luggage where there was no evidence that luggage racks were standard equipment, that the need for racks had ever been discussed, or that harm caused by the absence of racks was foreseeable).

---

[2]The doctrine of *res ipsa loquitur* is can apply in FELA cases to permit an inference of negligence on the part of the defendant in some circumstances. The doctrine does not apply in the case of an ordinary accident that could have occurred absent some negligence by the defendant. See *Robinson v. Burlington Northern Railroad Co.*, 131 F.3d 648, 652-55 (7th Cir. 1997). Because, as CSX points out, Smith's eye injury could be explained in ways not involving any negligence on the part of CSX (*i.e.*, if Smith had wiped an ordinary dirt or dust particle into his eye), *res ipsa loquitur* does not defeat summary judgment here.

The basis for an employer's liability under FELA is its negligence, not the mere fact that injuries occur.  *Gottshall*, 512 U.S. at 543.  Nevertheless, an employee's burden of proof is met "when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference [of employer negligence]."  *Rogers*, 352 U.S. at 508.  Smith has presented just enough evidence to raise a genuine issue of fact about the nature of the substance causing his injuries, its source, and CSX's notice of the potential for harm.  The facts and inferences viewed in the light most favorable to Smith demonstrate that a jury should determine whether or not CSX was negligent.[3]

---

[3]Although Smith's case raises close questions of causation and foreseeability, it is distinguishable from a recent Seventh Circuit decision where the plaintiff presented insufficient evidence for his FELA claim to survive summary judgment.  In *Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739 (7th Cir. 2005), a railroad worker slipped and fell from a ladder attached to a rail car, suffering injury.  While on the ground, the worker noticed a sticky, oily substance on the ladder rung that he believed had come from accumulated oil pools in the rail yard.  The worker brought suit against his employer under the FELA.

The district court granted the employer's motion for summary judgment and the Seventh Circuit affirmed.  Although there was evidence that accumulated oil pools had existed in the past and that plaintiff's employer was aware of them, plaintiff could not show that such a pool existed on the day of his injury or that he had in fact stepped in such a pool and tracked oil onto the ladder.  *Id.* at 743.  The court also held that it would be unreasonable to impose liability based solely on plaintiff's alternative explanation that the grease might have been on the ladder before he stepped onto it.  Because there were a "myriad of possible ways" by which oil could have gotten onto the ladder even after the defendant's pre-departure inspection of its rail cars, plaintiff's argument for negligence rested on "mere speculation and conjecture."  *Id.* at 745, quoting *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998).

This case is similar to *Holbrook* in that the plaintiffs in both cases could not definitively prove either the existence of a dangerous condition on the date of their injury or their contact with that condition.  However, unlike *Holbrook*, Smith has presented sufficient circumstantial evidence from which a jury could conclude

(continued...)

*Conclusion*

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 22) is DENIED.  Trial remains set for March 20, 2006, with a final pretrial conference at 10:00 a.m. on March 10, 2006.

So ordered.

Date: January 31, 2006

_____

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Richard Paul Gilardi
GILARDI COOPER & LUMUPO
rpgilardi@lawgcl.com

Bruce A. Hugon
STUART & BRANIGIN
bah@stuartlaw.com

---

[3](...continued)
that his injury was caused by a dangerous condition resulting from employer negligence.  In *Holbrook*, the plaintiff could show that an oily substance had caused him to slip, but he offered no proof that the oily substance was from an accumulated oil pool or some other situation implicating employer negligence.  In this case, Smith cannot conclusively establish that a chemical caused his injuries.  As discussed above, however, he has created a genuine issue of fact that it did.  Once this premise is accepted, Smith does not face the same difficulties as the plaintiff in *Holbrook*.  Any exposure to chemicals necessarily would have been from the air hoses he handled, permitting an inference of employer negligence.

-14-